UNTIED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEDE MOHR HIGHHOUSE<br>9091 Leet Road<br>North East, PA 16428<br><br>      Plaintiff<br><br>      vs.<br><br>UNITED STATES OF AMERICA<br><br>C/O<br>Honorable Eric H. Holder, Jr.<br>**Attorney General of the United States of America**<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>AND<br><br>C/O Honorable David J. Hickton<br>**United States Attorney**<br>Western District of Pennsylvania<br>Federal Courthouse<br>17 South Park Row<br>Room A-330<br>Erie, Pennsylvania 16501<br><br>AND<br><br>C/O Will A. Gunn<br>**General Counsel**<br>**Department of Veterans Affairs**<br>Office of the General Counsel (021B)<br>810 Vermont Avenue, N.W.<br>Washington, D.C. 20420<br>AND | **COMPLAINT** (electronically filed)<br><br><br><br><br><br>CIVIL ACTION NO. 14-140 Erie<br><br><br><br><br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

|  |  |
|---|---|
| C/O Jose H. Lopez<br>**Regional Counsel**<br>**Department of Veterans Affairs**<br>Office of Regional Counsel, Region 4<br>VA Medical Center<br>3900 Woodland Avenue<br>Philadelphia, Pennsylvania  19104<br><br>             Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

AND NOW COMES the Plaintiff, THEDE MOHR HIGHHOUSE, by and through his attorney, CHRISTINA S. NACOPOULOS, ESQ., and for his Complaint against the Defendant, UNITED STATES OF AMERICA, respectfully represents as follows:

## JURISDICTION

1. That this action arises under the Federal Tort Claims Act, 28 USCA §1346(b) and 28 USCA §§ 2671 through 2680, and is brought within six months of the denial of the administrative claim by The Department of Veterans Affairs which occurred on November 22, 2013, all in accord with 28 USCA § 2401(b);

2. This Court is vested with jurisdiction pursuant to § 1346 (b) of Title 28 of the United States Code (28 USC § 1345(b)).

## PARTIES

3. Plaintiff, THEDE MOHR HIGHHOUSE resides in the City of North East, County of Erie, State of Pennsylvania, which is within the United States District Court for the Western District of Pennsylvania.

2

4.  The acts and omissions complained of herein occurred in the City of Erie, County of Erie, State of Pennsylvania, which is within the United States District Court for the Western District of Pennsylvania.

5.  The Veterans Affairs Medical Center located on 135 East 38th Street, Erie, Pennsylvania 16504 is a hospital operated by the Department of Veterans Affairs, an agency of the Defendant, UNITED STATES OF AMERICA and as such is an office and agent of the Defendant, UNITED STATES OF AMERICA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.  On April 25, 2013, Plaintiff, THEDE MOHR HIGHHOUSE filed Standard Form 95, and on May 1, 2013, perfected the within claim with the Department of Veterans Affairs, Office of Regional Counsel, VA Pittsburgh Healthcare System in Pittsburgh, Pennsylvania, an agency of the Defendant, UNITED STATES OF AMERICA. A time-stamped copy of said claim is attached hereto as Exhibit "1".

7.  Plaintiff's claims were denied by letter from the U.S. Department of Veterans Affairs, Office of Regional Counsel, Region 4, Pittsburgh, Pennsylvania on November 22, 2013, permitting the within litigation within six months of said denial. A copy of said denial letter is attached hereto as Exhibit "2".

## FIRST CLAIM FOR RELIEF

8.  That on or around January 22, 2011 until on or around January 30, 2012, Plaintiff, THEDE MOHR HIGHHOUSE, was a patient of The Veterans Affairs Medical Center in Erie, Pennsylvania and under the care of the agents, servants and employees of the Defendant, UNITED STATES OF AMERICA, who were acting within the course and scope of their employment; prior to said date, Plaintiff, THEDE MOHR HIGHHOUSE had undergone treatment with various agents,

servants and employees of The Veterans Affairs Medical Center in Erie, Pennsylvania for general medical care.

9. That on or around mid-January 2011, Plaintiff, THEDE MOHR HIGHHOUSE was injured in a skiing accident, where he fell and twisted his left wrist.

10. On January 22, 2011, Plaintiff presented to the emergency room of the Veterans Affairs Medical Center in Erie, Pennsylvania, and was seen by emergency room doctor, Dr. Clayton Lindemuth, an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania. Plaintiff suffered a wrist fracture which was reduced by Dr. Michael Fitztgerald, an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania. Plaintiff also hit his head in the accident, so Dr. Lindemuth ordered a Head CT on January 22, 2011, which showed an abnormality of "apparent focal enlargement of the basilar artery worrisome for a basilar tip aneurysm".

11. Due to an abnormality on the CT scan of January 22, 2011, Dr. Lobell (the reading physician and an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania) recommended an MRA of the brain for further characterization.

12. Plaintiff's primary care provider was Lydia J. Maring, CRNP, an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania.

13. On Plaintiff's follow up visit of January 24, 2011 with Dr. Michael Fitzgerald regarding his wrist fracture, Plaintiff was instructed to make a follow-up appt. with his primary clinic as follow-up to the CT of his head--Lydia J. Maring, CRNP signed off on the above note.

14. On January 24, 2011, Lydia J. Maring, CRNP ordered an MRA of Plaintiff's head at Saint Vincent Health Center for further evaluation of his CT scan, and told him to come back for an increase in headache. In a phone call on January 27, 2011, Plaintiff was still told by nurse

Malinowski, an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania, to keep his appointment with Saint Vincent Health Center for his MRA per Lydia Maring's instructions.

15. On February 4, 2011, Plaintiff underwent an MR Angiogram of the Head w/o contrast and MR of the brain w/o contrast as ordered by his PCP Lydia J. Maring, CRNP, an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania.

16. No agent or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania ever shared with Plaintiff the results of the radiology studies of January 22, 2011 worrisome for a basilar tip aneurysm, or the radiology studies of February 4, 2011, which revealed a "rather large basilar tip aneurysm and possible communicating artery aneurysm".

17. The February 4, 2011 study was completed at or around 1:17 p.m., and around 2:18 p.m., the same day, on February 4, 2011, Lydia J. Maring, CRNP prescribed Hydrocodone and Acetaminophen for Plaintiff, but did nothing in response to the abnormal MRA/MRI results.

18. On March 24, 2011, Claimant followed up with Lydia J. Maring, CRNP, an agent, servant and/or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania, who still did nothing in response the abnormal MRA/MRI results and CT results, and in response to large basilar tip aneurysm and communicating artery aneurysm.

19. On October 20, 2011, Claimant presented for an access appt. to the Veterans Affairs Medical Center in Erie, Pennsylvania, and was seen by David M. Lavin, M.D., an agent, servant and/or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania, who also did nothing in response the abnormal MRA/MRI results and CT results, and in response to large basilar tip aneurysm and communicating artery aneurysm.

20. On October 26, 2011, Claimant requested to see his PCP for jaw pain he had been having, and also for follow-up since being placed on antibiotics, and also for his routine follow-up, but Lydia Maring, CRNP did not see him in the clinic since it was after 12 p.m., even though he was due for routine follow-up.

21. On January 24, 2012, Plaintiff presented to the Emergency Room department of the Veterans Affairs Medical Center in Erie, Pennsylvania for facial and jaw pain and saw Maria W. Davison, M.D., an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania; Dr. Davison ordered a CT of the head without contrast for a clinical history of a headache. Findings were "worrisome for aneurysm of the tip of the basilar artery."

22. Dr. Kavita B. Sanghvi, staff physician and an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania, read the CT of the head and recommended an MR angiogram of the brain if one was not already done. On January 24, 2012, Dr. Davison turned over Plaintiff's care to Dr. Clayton Lindemuth an agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania.

23. Findings of the January 24, 2012 were conveyed to Dr. Clayton Lindemuth, who also did nothing in response to the basilar tip aneurysm or the communicating artery aneurysm, even though this was the second CT scan of Plaintiff's head under his care in a year's time, which was "worrisome for aneurysm of the tip of the basilar artery."

24. Plaintiff had a follow-up appointment with the clinic on January 25, 2012 that was cancelled because Lydia J. Maring, CRNP was not able to see him in follow-up until the next week. Lydia J. Maring, CRNP acknowledged receipt of the ER visit of January 24, 2012, and notes but still did nothing about the abnormal results on the CT scan from 1/22/11, the CT scan from 1/24/12 and the MRA on 2/4/11.

25. Despite several follow up visits with the Veterans Affairs Medical Center in Erie, Pennsylvania, and several opportunities to do so, no agent, servant or employee of the Veterans Affairs Medical Center in Erie, Pennsylvania did anything in response to Claimant's basilar tip aneurysm or the communicating artery aneurysm. Even as late a week before his aneurysm ruptured, Plaintiff, THEDE MOHR HIGHHOUSE came to see his PCP as instructed but was told he needed to call to make an appt. Lydia J. Maring, CRNP acknowledged receipt of this encounter and despite another opportunity and the obligation to review his Emergency Room records and CT results of 1/24/12, did nothing in follow-up for his abnormal brain test results and his large basilar tip aneurysm and communicating artery aneurysm..

26. On January 30, 2012, Plaintiff complained of a headache, photosensitivity, nausea and vomiting and presented to the Emergency Room department of the Veterans Affairs Medical Center in Erie, Pennsylvania. A CT of the head showed an acute subarachnoid hemorrhage related to the aneurysm of the basilar tip. Plaintiff's basilar tip aneurysm had ruptured and he was then sent to the Emergency Room department of Saint Vincent Health Center for further treatment.

27. At Saint Vincent Health Center, Plaintiff underwent underwent a coil embolization of his basilar tip aneurysm on January 30, 2012; among a host of other problems, he also suffered from atrial flutter and fibrillation while hospitalized, cerebral salt wasting syndrome, and acute urinary retention for which a Foley catheter was placed. He was discharged from Saint Vincent Health Center on February 9, 2012.

28. On February 16th, 2012, Plaintiff met with Lydia Maring, CRNP, who admitted that she did not see the results of the MRA of 2/4/11, and admitted she did not inform Plaintiff of the results. She told Plaintiff she was sorry for the pain he suffered from the ruptured aneurysm.

7

29. Plaintiff did not only suffer pain from his ruptured aneurysm, he suffered permanent and irreversible "thalamic brain injury" and injury to the thalamus part of the brain, directly from the brain bleed, the various sequalae of which will affect him for the remainder of his life.

30. After his discharge from Saint Vincent Health Center, Plaintiff, THEDE MOHR HIGHHOUSE continued to suffer from severe headaches, about 2-3 times a week associated with lightheadedness and vertigo, visual obscurations, blurred vision and loss of concentration, urinary retention, requiring self-catheterization procedures, impaired hearing loss from his baseline, memory loss, cognitive issues, slurred speech, vertigo, dizziness, cerebral salt wasting leading to hyponatremia, persistent neck and headache pain since the aneurysm bleed, periodic severe stabbing pain in an extremity, poor sleep, insomnia, leg buckling, falling, unsteady gait, anxiety disorder, depressive disorder and cognitive disorder, depression, mood swings, nightly "night sweats" and nightmares among a host of neurologic and other injuries directly the result of his aneurysm rupturing.

31. On February 27, 2012, Chief of Staff of the Veterans Affairs Medical Center in Erie, Pennsylvania, disclosed to Plaintiff, THEDE MOHR HIGHHOUSE that no action was taken based on the results of the MRA of his brain on February 4, 2011.

32. On April 17, 2012, Plaintiff underwent coil embolization of his second communicating artery aneurysm by Dr. Charles Romero and was discharged April 19, 2012.

33. Plaintiff continued to follow with Dr. Romero as an outpatient and continued to undergo testing, including follow-up MRIs and MRAs of the brain. On March 19, 2013, on an MRI/MRA of the brain, there was evidence of recurrence and recanalization of the previously treated basilar tip aneurysm.

34. Plaintiff underwent surgical retreatment of his ruptured basilar tip aneurysm on May 9, 2013, complicated by coil displacement out of the aneurysm neck into the left posterior cerebral artery. He was discharged on May 11, 2013.

35. Based on catheter angiographic assessment-cerebral angiogram done on December 16, 2013, Plaintiff was admitted to Hamot UPMC in Erie, PA for surgical retreatment of his ruptured basilar tip aneurysm; he underwent his fourth brain surgery on January 21, 2014. He continues to follow with nuerointerventionists, neurosurgeons, neurology, and various specialties. He is at risk for future harm and damages.

36. From the time of the abnormal results of the MRA of 2/4/11 forward, and continuing until the time Plaintiff's basilar tip aneurysm ruptured, Lydia J. Maring, CRNP and other agents, servants and employees of the Veterans Affairs Medical Center in Erie, Pennsylvania did absolutely nothing in response to three abnormal brain test results, and otherwise failed to prevent extensive subarachnoid hemorrhage, intracranial brain bleed, thalamic brain injury, and aneurysm growth.

37. At all times relevant hereto, the Defendant, UNITED STATES OF AMERICA, acted by and through its duly authorized agents, servants, employees, ostensible or apparent agents, including but not limited to Lydia J. Maring, CRNP, those under her or the Erie Veterans Affairs Medical Center's control or supervision, Dr. Clayton Lindemuth, those under his or the Erie Veterans Affairs Medical Center's control or supervision, David M. Lavin, M.D., those under his or the Erie Veterans Affairs Medical Center's control or supervision, Dr. Kavita B. Sanghvi, those under his/her or the Erie Veterans Affairs Medical Center's control or supervision, Maria W. Davison, M.D., those under her or the Erie Veterans Affairs Medical Center's control or supervision and any other person involved, all of whom were duly authorized agents, servants, employees,

ostensible or apparent agents of Veterans Affairs Medical Center in Erie, Pennsylvania, and all of whom were acting within the scope of their employment and agency with the Defendant.

38. Defendant, UNITED STATES OF AMERICA, acting by and through its duly authorized agents, servants, employees, ostensible or apparent agents, including more specifically Lydia J. Maring, CRNP, Dr. Clayton Lindemuth, David M. Lavin, M.D., Dr. Kavita B. Sanghvi, Maria W. Davison, M.D, but not necessary limited to these persons, and those under their or the Erie Veterans Affairs Medical Center's control or supervision, negligently provided medical care and treatment to Plaintiff, THEDE MOHR HIGHHOUSE, and was negligent and deviated from the accepted standards of medical care in general or in any of the following particulars:

   a. Failure to communicate the results of the 1/22/11 CT scan of the head;

   b. Failure to communicate the results of the 2/4/11 MRA/MRI of 2/4/11;

   c. Failure to take any action on the abnormal results of the MRA/MRI of 2/4/11, the abnormal brain results preceding and abnormal results following the 2/4/11 radiological study;

   d. Failure to advise Plaintiff that he had basilar tip aneurysm or communicating artery aneurysm;

   e. Failure to prevent a ruptured basilar tip aneurysm and extensive subarachnoid hemorrhage and all sequalae therefrom;

   f. Doing NOTHING to address the two aneurysms demonstrated on the MRA/MRI test study ordered by Lydia J. Maring, CRNP;

   g. Failure to refer Plaintiff to a neurologist for treatment and consultation relating to basilar tip aneurysm and second communicating artery aneurysm;

   h. Failure to refer Plaintiff to a neurgosurgeon for treatment and consultation relating to basilar tip aneurysm and second communicating artery aneurysm;

   i. Failure to refer Plaintiff to appropriate specialists for consultation and treatment relating to basilar tip aneurysm and second communicating artery aneurysm;

j.  Failure on several opportunities to review the Plaintiff's chart and follow up on the results of the MRA/MRI of 2/4/11 showing an irregular shaped basilar tip aneurysm and communicating artery aneurysm;

k.  Failures of accepted standards of medical care each and every day Plaintiff's aneurysms went untreated for admittedly failing to failing to follow up on abnormal test results, failing to refer Plaintiff to a neurologist or other specialist for surgical treatment of his two aneurysms, failing to inform Plaintiff of his MRI/MRA results from 2011 and 2012 before his basilar tip aneurysm ruptured, and doing nothing in response to three abnormal brain test results, and for otherwise failing to prevent extensive subarachnoid hemorrhage, intracranial brain bleed, aneurysm growth in size and aneurysm rupture, and were otherwise negligent in their treatment of Plaintiff;

l.  Failing to realize that Plaintiff's basilar tip aneurysm and second communicating artery aneurysm required surgical treatment to prevent extensive brain bleed;

m.  Directly causing through negligence thalamic brain injury and injury to the thalamus part of the brain, and all of its consequences and sequalae;

n.  Directly causing the need for Plaintiff to undergo four brain surgeries and all sequelae therefrom that would have otherwise been prevented;

o.  Depriving Plaintiff of the opportunity to schedule elective surgery to repair his basilar tip aneurysm under optimal circumstances, thereby causing and/or substantially increasing the risk of residual aneurysm lumen, recurrence and recanalization of basilar tip aneurysm and continued need for future treatment and retreatment related to same;

p.  Directly causing through negligence Plaintiff's permanent disability;

q.  Directly causing through negligence Plaintiff's inability to earn a living;

r.  Failing to prevent extensive subarachnoid hemorrhage and aneurysm growth;

s.  Failing to prevent aneurysm rupture,

t.  Failure by this defendant of its direct and non-delegable duties to Plaintiff, THEDE MOHR HIGHHOUSE and the breach, of which it knew or should have known, of its direct and non-delegable duties to Plaintiff, THEDE MOHR HIGHHOUSE to uphold the proper standard of care which included the duty to maintain safe and adequate facilities and equipment, to select and retain competent staff, to oversee all persons practicing medicine and nursing and health care services within its facility and to formulate, adopt and enforce adequate rules and policies to ensure quality care for Plaintiff, THEDE MOHR HIGHHOUSE, all of which breaches were a substantial factor in bringing about the harm and

damage to Plaintiff, THEDE MOHR HIGHHOUSE, as aforesaid, and all of which breaches it had actual and/or constructive notice and knowledge;

u. Being otherwise negligent in the care and treatment of Plaintiff, THEDE MOHR HIGHHOUSE;

39. Defendant, UNITED STATES OF AMERICA, acting by and through its duly authorized agents, servants, employees, ostensible or apparent agents, including more specifically Lydia J. Maring, CRNP, Dr. Clayton Lindemuth, David M. Lavin, M.D., Dr. Kavita B. Sanghvi, Maria W. Davison, M.D, but not necessary limited to these persons, and those under their or the Erie Veterans Affairs Medical Center's control or supervision, was otherwise negligent in the medical care and treatment provided to Plaintiff, THEDE MOHR HIGHHOUSE.

40. That as a direct and proximate result of the joint, combined and concurrent negligence of the Defendant, UNITED STATES OF AMERICA, its agents, servants, and/or employees, including more specifically Lydia J. Maring, CRNP, Dr. Clayton Lindemuth, David M. Lavin, M.D., Dr. Kavita B. Sanghvi, Maria W. Davison, M.D, but not necessary limited to these persons, and those under their or the Erie Veterans Affairs Medical Center's control or supervision, the Plaintiff, THEDE MOHR HIGHHOUSE, has been seriously and permanently injured, he has suffered injuries of a personal and pecuniary nature *including but not limited* to a ruptured basilar tip aneurysm, extensive subarachnoid hemorrhage as a result of the ruptured basilar tip aneurysm, extensive brain bleed, growth in size of basilar tip aneurysm, thalamic brain injury, injury to the thalamus, nausea, vomiting, GI upset, weakness, fever, cerebral salt wasting syndrome, hyponatremia requiring salt supplementation, atrial fibrillation, atrial flutter, heart injury and problems, massive thunderclap quality headaches, numbness in both legs, burning eyes, dizziness, vertigo, short term memory loss, hearing loss, ringing and noise in ears, vision loss, double vision, lower quadrant visual obscuration, blurriness with kaleidoscope or prism patterns of disturbance, ocular migraines with temporal

swelling, loss of coordination, weakness in hands, knees and legs, loss of bladder control, acute urinary retention, back pain, back spasms, neck pain, anxiety, depression, trouble walking, necessity to use a cane as an assistive device, inability to work due to memory loss and dizziness after the rupture of his aneurysm, complete disability, untreated aneurysm at the anterior communicating artery complex level, which required separate treatment with separate surgery and convalescence in the face of a previous coil embolization, residual aneurysm lumen, recurrence and recanalization of basilar tip aneurysm and future treatment related to same, increased risk for recurrence and recanalization of the basilar tip aneurysm due to its rupture and future treatment related to same, increased risk for recanalization of the anterior communicating artery and future treatment related to same, arm numbness and discomfort, severe insomnia, severe emotional distress, and all symptoms and sequalae associated with all of the above diagnoses, severe pain and suffering, avoidable medical treatment and enormous medical expenses, including several hospitalizations, procedures and future treatment continuing into the indefinite future from permanent damage caused by the negligence of Veterans Affairs Medical Center of Erie's employees and agents. The damages above are not exhaustive.

41.     That as a direct and proximate result of the joint, combined and concurrent negligence of the Defendant, its agents, servants, and/or employees, the Plaintiff, THEDE MOHR HIGHHOUSE underwent several unnecessary hospital admissions, and several unnecessary procedures that otherwise would have been avoided including emergent treatment of a brain bleed, and several otherwise avoidable brain surgeries and hospital admissions, became total disabled, required treatment with various specialties of medical care, including mental health and became dependent on assistive devices, all of which would have otherwise been avoided.

42. That as a direct and proximate result of the joint, combined and concurrent negligence of the Defendant, its agents, servants, and/or employees, the Plaintiff, THEDE MOHR HIGHHOUSE is permanently disabled, remains debilitated, weak, has difficulty ambulating, has serious cognitive impairment, and has not returned to his baseline status before he was negligently injured, and will remain disabled and impaired for the remainder of his life. He remains under the care of specialists including neurointerventionists, neurologists, neuropsychologists, physical medicine specialists, mental health, behavioral health and cardiologists to manage his various disabling conditions.

43. That as a direct and proximate result of the joint, combined and concurrent negligence of the Defendant, its agents, servants, and/or employees, the Plaintiff, THEDE MOHR HIGHHOUSE has experienced extreme pain and suffering, loss of the enjoyment of life and other damages, increased risk of harm and lost chance of a successful outcome to alter his prognosis, including increased risk for future brain surgeries, and future brain injury, and future debilitation; he will continue to experience extreme pain and suffering, loss of the enjoyment of life and other damages into the indefinite future; he has incurred medical expenses and will continue to incur medical expenses into the indefinite future.

44. That as a direct and proximate result of the joint, combined and concurrent negligence of the Defendant, its agents, servants, and/or employees, the Plaintiff, THEDE MOHR HIGHHOUSE suffered a loss of income, lost earning capacity and was prevented from transacting his business and daily activities and will be prevented from doing so into the indefinite future.

## SECOND CLAIM FOR RELIEF

45. The Paragraphs written above are incorporated by reference, and all of the preceding allegations as if fully rewritten herein.

Case 1:14-cv-00140-MRH   Document 1   Filed 05/12/14   Page 15 of 16

46. That as a direct and proximate result of the joint, combined, and concurrent negligence of the Defendant, its agents, servants, and/or employees, the Plaintiff, THEDE MOHR HIGHHOUSE has sustained severe emotional distress, mental anguish, and has otherwise sustained mental and emotional grief, agony, and suffering.

**WHEREFORE**, Plaintiff, THEDE MOHR HIGHHOUSE prays for judgment against Defendant, THE UNITED STATES OF AMERICA, in compensatory damages in the amount of $2,000,000.00 for his damages, together with interest, reasonable attorneys' fees, costs, and whatever further relief this Court deems proper, or that justice requires.

Respectfully submitted,

CHRISTINA S. NACOPOULOS, ATTORNEY AT LAW

By _/s/ Christina S. Nacopoulos_
Christina S. Nacopoulos, Esq.
Attorney for Plaintiff
PA I.D. No. 86841
349 West Sixth Street, Suite 1
Erie, PA  16507
Ph. (814) 454-4540
Fax (814) 454-4560
email: christina@attorneychristina.com
15

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all the issues of the within causes of action and on all of Plaintiff's claims for relief.

_____
Christina S. Nacopoulos, Esq.
Attorney for Plaintiff